UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Stephen J. Green, <br><br>                     Plaintiff, <br><br> v. <br><br> Director Brian Sterling, Warden Charles Williams, and Deputy Warden John Palmer, <br><br>                     Defendants. | Civil Action No. 0:22-1634-SAL <br><br> **Order** |

This matter is before the court for review of Magistrate Judge Paige J. Gossett's Report and Recommendation, issued pursuant to 28 U.S.C. §636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) (Report). [ECF No. 117.] For the reasons below, the court adopts the Report.

**FACTUAL AND PROCEDURAL BACKGROUND**

The magistrate judge set forth a detailed summary of this case in her Report. No party objects to the magistrate judge's summary, and the court fully incorporates it here. Before turning to the substance of the Report, however, we briefly discuss certain facts that are relevant to our review of the Report.

Green is a *pro se* prisoner who was housed within the Restricted Housing Unit (RHU) at the South Carolina Department of Corrections' (SCDC) Perry Correctional Facility. [ECF No. 117 at 1.] Green is also a Rastafarian. *Id.* In July and September 2021, while Green was housed within the RHU, his hair was cut. *Id.* Green alleges that cutting his hair is against his sincerely held religious beliefs. *Id.* at 1-2. Green also alleges that transgender inmates within SCDC may grow their hair, purchase female undergarments, and purchase and wear makeup, which does not accord with SCDC's grooming policy. *Id.* at 2. According to Green, SCDC treats transgender inmates

differently from inmates whose religions require them to wear their hair long (such as Rastafarian inmates). *Id.* At the times relevant to Green's complaint, SCDC housed only six transgender inmates at Perry Correctional Facility. [ECF No. 59-5, Harouff Decl. ¶ 22.] None of those inmates are housed in the RHU. *Id.*

Green sued SCDC, SCDC Director Bryan Stirling, Perry Correctional Institute Warden Charles Williams, and Perry Correctional Institute Deputy Warden John Palmer pursuant to 42 U.S.C. § 1983, alleging defendants violated the Fourteenth Amendment's Equal Protection Clause, the First Amendment's Free Exercise Clause, the Eighth Amendment's Cruel and Unusual Punishment Clause,[1] and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, et seq. [ECF No. 9 at 2.]

Defendants moved for summary judgment on Green's claims, and the parties fully briefed that motion. [ECF No. 59.] The magistrate judge now recommends the court grant Defendants' motion in its entirety. [ECF No. 117.] Green timely objected to the Report, Defendants replied, and Green filed a sur-reply. [*See* ECF Nos. 126, 128, and 129.] The matter is thus fully briefed and ripe for review.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations

---

[1] No party objected to the magistrate judge's construction of Green's claims. [ECF No. 117 at 2.]

to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[a]n the absence of *specific* objections … this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest on mere allegations or denials alleged in the pleading, but must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See*

Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## DISCUSSION

The magistrate judge recommends the court grant Defendants' motion and enter judgment in their favor on each of Green's four claims. We address each claim in turn below.

### I.     Eighth Amendment Claim

The magistrate judge recommends the court dismiss Green's Eighth Amendment claim because Green did not exhaust administrative remedies. [ECF No. 117 at 3-7.] Green does not object to the magistrate judge's recommendation. If a party does not object to a report, the court need not provide an explanation for adopting the report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The court, having thoroughly reviewed the Report, the applicable law, and the record in accordance with this standard, finds no clear error and adopts the magistrate's recommendation, incorporating it by reference here. The court thus grants Defendants summary judgment on Green's Eighth Amendment claim.

4

## II.     Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person . . . the equal protection of laws." U.S. Const. amend. XIV, § 1. To succeed on his Fourteenth Amendment claim, Green must show "he has been treated differently from others *with whom he is similarly situated* and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added). If Green makes this showing, the court must then determine whether the disparate treatment is justified under the appropriate level of scrutiny. *Id.* Because Green's claims arise in the prison context, we must consider whether the disparate treatment is "reasonably related to [any] legitimate penological interests." *Shawn v. Murphy*, 532 U.S. 223, 225 (2001).

The magistrate judge here recommends the court grant Defendants summary judgment on this claim because Green has not shown Defendants treated him differently from other similarly situated inmates housed within SCDC's RHU. [ECF No. 117 at 8-9.] In fact, the "unrefuted evidence" shows Green—who is housed in the RHU—is *not* similarly situated to the transgender inmates at Perry Correctional Facility—who are housed in general population. *Id.* Specifically, defendants provided evidence that none of Perry's six inmates who identify as transgender is housed in the RHU and that long hair and beards pose risks to maintaining security in the RHU, where there are heightened security concerns. *Id.*

Green objects to this conclusion, arguing the grooming policy applies to *all* inmates but SCDC makes exceptions for transgender inmates whether they are housed in general population or the RHU. [ECF No. 126 at 5.] Green also argues Defendants' response to his request to utilize the same "exception given to 'transgender' inmates" shows SCDC applies the policy based on gender identity, not housing. [*Id.* at 6.] According to Green, Defendant Williams pointed Green

5

to SCDC's inmate grooming policy standards as outlining "the grooming standards for all 'male' inmates" and further stated "[i]f you are declaring you are a 'transgender' please send A/W Duffy a Request to Staff." *Id.*

There are several problems with Green's objection. First, Green does not challenge Defendants' evidence that the SCDC does not currently house any inmates who identify as transgender in the RHU. [*See* ECF No. 59-5 ¶ 22.] His argument, then, is entirely speculative—we simply cannot determine how Defendants apply (or would apply) the grooming policy to transgender inmates in the RHU because there are no transgender inmates in the RHU. Second, Defendant Williams' response does not indicate Defendants hinge application of the grooming policy on gender identity rather than housing. It simply invited Green to submit a request if he identified as transgender.

Finally, the objection does not address the crux of the magistrate judge's finding—that inmates housed in the RHU are subject to much greater restrictions and not "similarly situated" to general population inmates. Green does not point to any evidence suggesting *all* inmates housed at Perry—whether in general population or the RHU—are similarly situated. On the other hand, Defendants' evidence shows the RHU is SCDC's second-most secure housing area and its inmates are subject to much greater security procedures. [ECF No. 59-5 ¶ 6.] The evidence also shows that it is necessary for Defendants to strictly enforce SCDC's grooming policy in the RHU to maintain order in this heightened security context. *Id.* ¶¶ 6, 9-15. The grooming policy helps maintain order in this highly secure area because "long hair … provide[s] hiding places for contraband" such as drugs and handcuff keys.[2] *Id.* ¶¶ 10-11. And it promotes security because

---

[2] Deputy Warden Harouff also testifies that long hair poses a safety threat because inmates could easily alter their appearance to escape prison. [ECF No. 59-5 at 3.] A similar scenario recently played out in Pennsylvania, where a state prisoner escaped from custody and altered his

6

RHU inmates are strip-searched every time they are taken out of their cells, and short hair allows deputies to perform a visual inspection. *Id.*

For these reasons, we overrule Green's objections. As much as Green argues Defendants excepted transgender inmates from the grooming policy based on gender identity, and not housing, that objection is entirely speculative since there is no evidence any transgender inmates were housed in the RHU during the time relevant to Green's complaint. And these objections do not address the magistrate judge's central conclusion: that an inmate housed in the RHU is not similarly situated to an inmate housed in general population. We thus adopt the magistrate judge's recommendation and grant Defendants summary judgment on Green's Fourteenth Amendment claim.[3]

---

appearance. *See* Escaped Pennsylvania murderer Danelo Cavalcante stole van, changed appearance, Reuters, September 10, 2023. https://www.reuters.com/world/us/escaped-pennsylvania-murderer-changes-appearance-elude-capture-2023-09-10/.

[3] Plaintiff raises two more objections to the magistrate judge's finding on his Equal Protection claim. The first objection states "Plaintiff objects to the judge's finding concerning the claims of Religious Discrimination –associated with (A) his Fourteenth Amendment claim, [because] the magistrate judges report/recommendation makes no finding/legal finding/factual or legal conclusions and or adjudication of [P]laintiff's Fourteenth Amendment – Religious Discrimination – claim." [ECF No. 126 at 7.] The second objection is identical to this, but substitutes "Gender Discrimination" for religious discrimination. *Id.* at 7–8.

Although his complaint lacks specificity, Plaintiff does generally allege transgender female inmates are treated differently under the grooming policy than male inmates and inmates who practice Rastafarianism. [ECF No. 1.] But the magistrate judge's Report properly found Plaintiff's Fourteenth Amendment Equal Protection Claim fails because Plaintiff cannot show he is similarly situated to inmates in the general population, and there are no transgender inmates in the RHU. Even if Plaintiff has stated claims for religious and gender discrimination under the Equal Protection Clause, he has failed to show how he has been treated differently from other RHU inmates based on his gender or his religion, and these objections are overruled.

### III. First Amendment Free Exercise Clause

The Free Exercise Clause of the First Amendment requires prison officials to "reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019). A prison regulation that "substantially burdens" a "sincerely held religious belief 'is valid if it is reasonably related to penological interests.'" *Greenhill*, 944 F.3d at 253 (quoting *Turner*, 482 U.S. at 89). Courts must consider these factors when determining whether a prison regulation meets that standard: 1) whether it is rationally related to a legitimate and neutral governmental interest; 2) what alternative avenues remain open to the inmate to exercise his rights; 3) what impact would accommodating the asserted right have on guards, other prisoners, and the allocation of prison resources; and 4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Applying the *Turner* factors, the magistrate judge recommends granting summary judgment on this claim because Defendants produced evidence that SCDC's grooming policy is reasonably related to the penological interest of promoting prison security. [ECF No. 117 at 10-12.] The magistrate judge also notes courts have found promoting prison security is a "legitimate and neutral government objective. . . ." [ECF No. 117 at 10 (citing *Hines v. S.C. Dep't of Corrs.*, 148 F.3d 353 (4th Cir. 1998); *Braithwaite v. Hinkle*, 752 F. Supp. 2d 692, 694–95 (E.D. Va. 2010); *Jehovah v. Clarke*, 798 F.3d 169 (4th Cir. 2015)).]

Green objects, arguing the grooming policy is not facially neutral, so the magistrate judge should not apply the *Turner* factors at all. [ECF No. 126 at 9.] Green also argues Defendants "abandoned the 'governmental interest' position" when they "chose" not to apply it by excepting transgender inmates from the grooming policy. *Id.* But *Turner* does not suggest a court may only

8

apply the factors articulated therein after it finds a policy is facially neutral, and Green does not point to any authority indicating the magistrate judge should have considered the purported facial neutrality of the policy before applying the *Turner* factors.  And Defendants provided ample evidence that strictly applying the grooming policy by requiring inmates to keep their hair short promotes security in the high-security RHU, *which does not house transgender inmates*. [*See* ECF No. 117 at 11 (citing ECF No. 59-5 ¶¶ 5-6, 9-13).]  We agree with the magistrate judge that Defendants have shown SCDC's grooming policy reasonably relates to promoting prison security. We thus overrule Green's objections and adopt the magistrate judge's recommendation to grant Defendants summary judgment on Green's claim.

## IV.     RLUIPA

To prevail on his RLUIPA claim, Green must first show that he holds a sincere religious belief that is substantially burdened by the SCDC's grooming policy. *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015). Once he does, the burden shifts to the government to show that its actions were in furtherance of a compelling governmental interest and were the least restrictive means of furthering that interest. *Id*. at 362. The magistrate judge recommends the court grant Defendant's motion as to Green's RLUIPA claim because Defendants showed the grooming policy furthered a compelling governmental interest in security and that the policy was the least restrictive means of furthering that interest.[4]  [ECF No. 117 at 13-17.]  The magistrate judge also noted Green failed to point to any alternative policy Defendants could adopt in lieu of the grooming policy. *Id.* at 16.

---

[4] The parties do not dispute that Green's religious belief is sincere or that the grooming policy substantially burdens his exercise of that religious belief. The focus of the magistrate judge's analysis, then, is whether Defendants show the grooming policy served a compelling governmental interest and is the least restrictive means of furthering that interest. [ECF No. 117 at 13.]

Green objects to this recommendation on several grounds.  First, he argues the fact that Defendants allow transgender inmates to grow their hair out shows the grooming policy is not the least restrictive means of furthering the governmental interest.  [ECF No. 126 at 10.]   Second, he argues the magistrate judge should have weighed in his favor that Defendants allow transgender inmates to grow their hair out but claim there are concerns about changed appearances and the ability to conceal contraband against Rastafarian inmates.  *Id.* at 11.  Finally, he argues the magistrate judge should not have accepted Defendants' argument that prison officials would be unable to determine the legitimacy of any religious exception claims to the grooming policy because *Montano v. Hedgepath*, 120 F.3d 844 (8th Cir. 1997) holds that a chaplain, not an officer, must make that determination.  *Id.*

Each of Green's objections lacks merit.  As much as Green objects to the fact that transgender inmates may grow their hair long and Rastafarian inmates cannot, Green once again ignores the fact that he is housed in the RHU.  As the magistrate judge noted, Defendants presented ample evidence that requiring inmates to have short hair furthers a compelling government interest in maintaining staff efficiency and security in the RHU. [ECF No. 117 at 13-15.] Green does not challenge this finding, nor does he articulate how permitting transgender inmates—who, as discussed above, are *not* housed in the RHU—to grow their hair out means that there are less restrictive policies Defendants can adopt in the higher-security RHU.  And he does not identify *any* alternative policy Defendants could adopt. And, as the magistrate judge noted, other courts in this district have already "analyzed SCDC's current grooming policy and found the grooming regulations—including the forced cutting of hair—meet the 'least restrictive means' criteria." [ECF No. 117 at 16 (citing *Smith v. Ozmint*, No. 9:04-1819-PMD, 2010 WL 11636184 (D.S.C.

10

Mar. 18, 2010), *aff'd,* 396 F. App'x 944 (4th Cir. 2010); *Malik v. Ozmint*, No. 8:05-3472-RBH, 2010 WL 1052660, at *2-3 (D.S.C. Mar. 19, 2010).]

Green's objection under *Montano* also lacks merit. That case simply holds that a prison chaplain is not considered a state actor when he engages in inherently ecclesiastical functions. *Montano*, 120 F.3d at 851. It does not involve any discussion concerning who precisely can determine whether an inmate's religious belief is sincere. In any event, the magistrate judge noted Defendants' evidence on this point as highlighting why such a religious exemption from the policy would not work: officials would not be able to determine the legitimacy of the exemption requests, which would lead to more lawsuits, and the exemption would lead to increased security concerns. [ECF No. 117 at 17 (citing ECF No. 59-5 ¶¶ 3-4).]

Finally, Plaintiff's citations to the SCDC religious policies and *Montano* do not undermine the magistrate judge's finding that a religious exception here could result in abuse of a loophole in the grooming requirements. Plaintiff cites SCDC procedure by which a prison chaplain determines an inmate's religious beliefs. Nothing in the policies dissuades the court of the Warden's concern that inmates may claim religion as an end-run around the grooming policy. And *Monanto* simply says that prison chaplains are not state actors; it does not support Plaintiff's argument that religious exemptions to the SCDC grooming policy should be allowed. For all of these reasons, we overrule Green's objections.

## CONCLUSION

For the reasons above, the court adopts the Report, ECF No. 117, and incorporates it by reference. The court **GRANTS** Defendants' Motion for summary judgment, ECF No. 59, and dismisses this action.

IT IS SO ORDERED.

September 29, 2023
Columbia, South Carolina

Sherri A. Lydon
United States District Judge

12